## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **TODD NORMAN HANDEL,** | § | |
| Defendant- Petitioner**,** | § | |
| | § | |
| **v.** | § | **No. 3:04-CV-1770-G** |
| | § | **No. 3:01-CR-247-G** |
| **UNITED STATES OF AMERICA,** | § | |
| Plaintiff, Respondent**.** | § | |
| | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the United States

District Court for the Northern District of Texas, this case has  been referred to the United States

Magistrate Judge.  The findings, conclusions, and recommendation of the magistrate judge are as

follows:

### FINDINGS AND CONCLUSIONS

Todd Norman Handel ("Petitioner") seeks to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255.  Petitioner is a federal prisoner currently incarcerated in a federal

correctional institution.  Respondent is the United States of America ("Respondent").

### BACKGROUND

On July 25, 2001, Petitioner was charged with seven counts of an eleven count

indictment.  Count one charged him with conspiracy, in violation of 18 U.S.C. § 371.  Counts

four through nine charged him with being a felon in possession of a firearm, each in violation of

18 U.S.C. §§ 922 (g)(1) and 924 (a)(2).  On September 18, 2001, Petitioner pled guilty to count

four.  On January 22, 2002, Petitioner failed to appear for sentencing and a bench warrant was

issued.  He was subsequently arrested in Spain and returned to the United States under a waiver

of extradition.  On August 12, 2003,  Petitioner was sentenced to 87 months' imprisonment and a

three-year term of supervised release.  Petitioner did not appeal.  His § 2255 motion was timely

filed on August 13, 2004.  This Court held an evidentiary hearing on Petitioner's claims of

ineffective assistance of counsel on April 24, 2006.  The Court also considered the parties' post-

hearing submissions.

## STATEMENT OF THE CLAIMS

Petitioner alleges that he was denied the effective assistance of counsel.

## EXAMINATION OF THE CLAIMS

### Ineffective Assistance of Counsel

The Sixth Amendment of the United States Constitution guarantees that in all criminal

prosecutions, the accused has the right to the assistance of counsel for his defense.  *U.S. CONST.,*

*art. VI.*   To merit relief pursuant to § 2255 on a claim of ineffective assistance of counsel, a

movant must demonstrate that his trial counsel's performance fell below an objective standard of

reasonableness and that this deficient performance prejudiced his defense.  *Strickland v.*

*Washington,* 466 U.S. 668, 691 (1984).  In assessing whether a particular counsel's performance

was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable assistance.  *Id.* at 689.  A movant's failure to establish either

prong of the *Strickland* test requires the court to find that counsel's performance was not

constitutionally ineffective; hence courts are free to review ineffective assistance claims in any

order and need not address both the "deficient" and "prejudice" prongs if one component is

found lacking.  *Id.* at 697.  The prejudice prong of the *Strickland* test requires the petitioner to

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.* at 694.  A petitioner claiming ineffective assistance must prove that the challenged conduct of his counsel rendered the proceeding fundamentally unfair or unreliable.  *Lockhart v. Fretwell,* 506 U.S. 364, 372 (1993) (citing *Strickland,* 466 U.S. at 687).  Courts are required to consider the totality of the evidence in assessing whether the result would likely have been different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695.

1.   **Petitioner's allegation that counsel failed to object to sentence enhancements based on violations of an Extradition Treaty with Spain.**

Petitioner asserts that counsel provided ineffective assistance when he failed to object to the Court's application of enhancements under the Sentencing Guidelines.  He suggests that these enhancements violated the Extradition Treaty between Spain and the United States.[1] Petitioner does not show that he has standing to complain of a violation of the treaty or that the treaty was violated.

"Treaties are contracts between or among independent nations . . . designed to protect sovereign interests of nations, and it is up to the offended nations to determine whether a violation of sovereign interests occurred and requires redress."  *United States v. Zabaneh*, 837 F.2d 1249, 1261 (5th Cir. 1988).  "Only an offended nation can complain about the purported violation of an extradition treaty."  *United States v. Kaufman*, 874 F.2d 242, 243 (5th Cir. 1989). "Courts presume that the rights created by an international treaty belong to a state and that a private individual can not enforce them."  *United States v. Emuegbunam,* 268 F.3d 377, 389 (6th

---

[1]  Petitioner clarified in a response filed December 12, 2006, that he is not relying upon any agreement other than the extradition agreement with Spain.

3

Cir. 2001).  In the case at hand, Spain did not protest the action taken.  Individuals ordinarily may not challenge treaty interpretations in the absence of an express provision within the treaty or an action brought by a signatory nation.  *Goldstar S.A. v. United States*, 967 F.2d 965, 968 (4th Cir. 1992).  Petitioner asserts that none of the cited authorities are directly analogous to his case.  Despite this fact, the Court finds them to be binding as to the general effect of the issue of standing. Without Spain's challenge, it is undisputed that case law holds that Petitioner does not have standing to challenge his sentence based on a violation of the Extradition Treaty between Spain and the United States. Therefore, there could be no meritorious objection for counsel to make.

Petitioner also fails to show that the treaty was violated.  Petitioner claims that the enhancements represent punishment for additional offenses which would in turn violate the terms of extradition.  It is well established that guideline enhancements do not constitute punishment for additional offenses.

> To the extent that the Guidelines aggravate punishment for related conduct outside the elements of the crime on the theory that such conduct bears upon the "character of the offense," the offender is still punished only for the fact that the present offense was carried out in a manner that warrants increased punishment, not for a different offense (which that related conduct may or may not constitute). *Witte v. United States*, 515 U.S. 389, 402-03 (1995).

Based on these principals, Petitioner was punished only for the offense with which he was charged when he waived extradition.  The District Court sentenced Petitioner to 97 months imprisonment, well within the statutory maximum of 10 years.  *See* 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Petitioner does not show a basis for a valid objection that counsel should have made.

**2.      Petitioner's allegation that counsel failed to file notice of appeal**

4

Petitioner claims that following his sentence he expressed a desire to appeal to the United States Court of Appeals.   Petitioner claims that counsel led him to believe that the necessary steps had been taken to perfect an appeal.  He states that several issues of merit that were not foreclosed by the plea agreement's waiver of appeal should have been raised on appeal.

A criminal defense attorney does not have a duty to perfect an appeal on behalf of his convicted client until the client makes it known he wants an appeal.  *Childs v. United States*, 995 F. 2d 67, 69 (5th Cir. 1993).   Petitioner asserts that he "expressed to his defense counsel a desire to appeal." (July 11, 2006 Mem. at 6.)  The government claims that this assertion is misleading as Petitioner did not contend in his original § 2255 motion that he had asked counsel to file an appeal.  At the evidentiary hearing, Petitioner's counsel admitted on direct examination that Petitioner had spoken with him about an appeal.  (Tr. at 33).  Counsel believed that the issues that Petitioner brought up were waived by the plea agreement's waiver of appeal.  (Tr. at 32-33).  Further, on cross examination, counsel testified that  Petitioner did not ask him to file a notice of appeal until after the *Blakely* decision, a time at which the appeal would have been untimely. (Tr. at 39).

Petitioner testified that he believed either an appeal had already been filed, or an agreement had been worked out with the government.  (Tr. at 72).  He testified that he expressed his desire to appeal to counsel the day after sentencing while he was in Seagoville, but that counsel explained to him that he would be out of prison in six months.  (Tr. at 72).  Petitioner testified that he "assumed that we were going with an appeal."  (Tr. at 72).  He further states that this belief was based on an inference, and that he believed he mentioned it to counsel, but that he assumed the appeal was filed.  (Tr. at 73).  He also testified that he never told counsel that he did

5

not want to file a notice of appeal.  (Tr. at 73).

The government asserts that even if Petitioner expressed his desire to file a notice of appeal, Petitioner waived this right in his plea agreement.  In his plea agreement, Petitioner waived his right to appeal except on specified grounds.  These grounds were (1) to bring a direct appeal of any punishment imposed in excess of the statutory maximum, any punishment to the extent it constitutes an upward departure from the guideline range deemed most applicable by the court, and arithmetical errors in the guideline calculations; and (2) a claim of ineffective assistance of counsel.  The government correctly claims that his sentence does not exceed the maximum, and that the Court did not upwardly depart from the guideline ranges.  Petitioner did not have a right to appeal.  Therefore, counsel could not have been ineffective for failing to file a notice of appeal.

 Petitioner argues that had his case been properly appealed it would have been pending on direct appeal when *Blakely v. Washington,* 542 U.S. 296 (2004) was decided.  Petitioner asserts that a claim could have been made, based on the holding in *Blakely*, that the sentence imposed exceeded the statutory maximum.  Petitioner believes that the statutory maximum in this case is 46 months imprisonment, and that he received 41 additional months.

Based on the record, no grounds for appeal existed.  The plea agreement's waiver of appeal left open only the narrow exceptions for excessive punishment or arithmetical errors.  The fact that Petitioner may have thought an appeal had been filed, or may have believed that counsel had structured some kind of agreement to release him in six months does not change the fact that there were no grounds for an appeal.  Petitioner's hypothetical argument that if counsel had filed an appeal it would have been pending when *Blakely* was decided is based on speculation and not

factual information.  Even if an appeal had been filed, it would have been subject to dismissal as barred by the terms of the plea agreement. Counsel did not provide ineffective assistance by failing to appeal.

**3.**     **Petitioner's allegation that counsel failed to object to his sentence violating the statutory maximum.**

Petitioner claims that counsel should have objected to his sentence being over the statutory maximum based on the principles set forth in *Appendi v. New Jersey*, 530 U.S. 466, 490 (2000).  He suggests that even though *Blakely* and *United States v. Booker*, 543 U.S. 220 (2005)*,* have been found to not be retroactive that  "statutory maximum" as defined in *Appendi* meant the maximum sentence a judge could impose without the finding of additional facts.   Petitioner claims that *Blakely* is but a restatement of the rule of law announced in *Appendi* which was decided before his judgment became final.   Petitioner asserts that it is up to the Court to make a threshold inquiry as to the type of decision issued by the Supreme Court that is advanced for retroactive application. Petitioner argues that his sentence is unconstitutional under *Blakely*.  He further argues that even though *Blakely* was not decided at the time he was sentenced, he is entitled to the benefit of the *Blakely* decision because *Blakely*, for all intents and purposes, arose out of, and was based on, the Supreme Court's prior decision in *Apprendi*, a decision which pre-dated his sentencing.

In *Blakely*, the Supreme Court invalidated a sentencing scheme in effect in the State of Washington, which allowed a judge to sentence a defendant to a punishment beyond a statutory range on the basis of judicially determined facts. *Id.* at 2538.  In doing so, the Supreme Court applied the rule announced in *Apprendi* that: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

submitted to a jury, and proved beyond a reasonable doubt." No mention was made in *Blakely* about the validity of the United States Sentencing Guidelines.  In *Booker*, however, the Supreme Court extended its holding in *Blakely* to the Federal Sentencing Guidelines, and concluded that there was no distinction of constitutional significant between the Federal Sentencing Guidelines and the state sentencing scheme at issue in *Blakely*.  *Id.* at 749.  In *Booker*, the Supreme Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 756.  In the case at hand, counsel could not have been expected to foresee future developments in the law.  *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. 1981) ; *Green v. Johnson,* 116 F.3d 1115, 1125 (5th Cir. 1997).  Based on the fact that counsel could not have been expected to foresee the *Blakely/Booker* decisions, counsel could not have been ineffective for failing to object based on *Appendi*.

Reviewing all of the issues, this Court finds that  Petitioner has failed to show that counsel's performance fell below an objective standard of reasonableness and that any deficient performance prejudiced his defense.  *Strickland* 466 U.S. at 691.

## <u>RECOMMENDATION</u>

This Court hereby recommends that Movant's motion to vacate, set aside, or modify his

conviction and sentence pursuant to 28 U.S.C. § 2255 be DENIED.

SIGNED, JANUARY 11, 2007.

_____

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).